UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFERY M. KINZLE,

                        Petitioner,

        v.

MIKE OBENLAND,

                        Respondent.

Case No. C14-703-JCC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Jeffery Kinzle is a Washington prisoner who is currently confined at the

Monroe Correctional Complex - Washington State Reformatory Unit. He seeks relief under 28

U.S.C. § 2254 from three Snohomish County Superior Court judgments. The operative petition

in this action is Petitioner's third amended petition filed on September 25, 2018. (Dkt. # 60.)

Respondent has filed an answer to Petitioner's third amended petition (dkt. # 66), Petitioner has

filed a response to Respondent's answer (dkt. # 71), and Respondent has filed a reply to

Petitioner's response (dkt. # 77). Respondent has also submitted the portions of the state court

record he deems relevant to review of the petition. (*See* Dkt. ## 19, 45, 67.) Petitioner has

submitted additional portions of the state court record for review, as well as exhibits in support

REPORT AND RECOMMENDATION
PAGE - 1

of his third amended petition. (*See* Dkt. ## 33, 61.)

This Court, having carefully reviewed Petitioner's third amended petition, all briefing of the parties relating to that petition, and the balance of the record, concludes that Petitioner's third amended petition should be denied and this action should be dismissed with prejudice.

## II.    CHALLENGED JUDGMENTS

Petitioner seeks to challenge three separate judgments of the Snohomish County Superior Court, those filed under cause numbers 11-1-0617-9, 11-1-00709-4, and 11-1-00710-8.

### A.    Cause No. 11-1-0617-9

In cause number 11-1-0617-9, Petitioner was convicted, following a guilty plea, of one count of failing to register as a sex offender, and was sentenced to 90 days confinement on that charge. (*See* Dkt. # 21, Ex. 28.)

### B.    Cause No. 11-1-00709-4

In cause number 11-1-00709-4, Petitioner was convicted, following a jury trial, of one count of indecent liberties by forcible compulsion, and was sentenced under RCW 9.94A.507 to an indeterminate sentence with a minimum term of 102 months imprisonment and a maximum term of life. (*See id.*, Ex. 10.)

### C.    Cause No. 11-1-00710-8

In cause number 11-1-00710-8, Petitioner was convicted, following a jury trial, of two counts of first degree child molestation, and was sentenced under RCW 9.94A.507 to an indeterminate sentence with a minimum term of 198 months imprisonment and a maximum term of life. (*See id.*, Ex. 29.) One of the two counts of child molestation was reversed on appeal, and the case was remanded to the superior court. *See State v. Kinzle*, 181 Wn. App. 774 (2014). Petitioner was thereafter resentenced on the surviving count to an indeterminate sentence with a

minimum term of 171 months imprisonment and a maximum term of life. (*See* Dkt. # 33, Ex. 31.) Petitioner was ordered to serve this sentence consecutive to the sentence imposed in cause number 11-1-00709-4. (*See id.*)

### III.    FACTUAL HISTORY

#### A.    Failure to Register as a Sex Offender (Cause No. 11-1-00617-9)

Petitioner, in his guilty plea statement in cause no. 11-1-00617-9, stated the facts underlying his failure to register charge as follows:

> On or about Feb. 4, 2000, in Snohomish Co, WA, I was convicted of a sex offense requiring registration and did, on March 13, 2011, knowingly fail to register with the Snohomish County Sheriff while I was a resident of Snohomish County.

(*Id.*, Ex. 48 at 7.)

#### B.    Indecent Liberties (Cause No. 11-1-00709-4)

The Washington Court of Appeals, on direct appeal of Petitioner's conviction under cause number 11-1-00709-4, summarized the facts relevant to Petitioner's indecent liberties conviction as follows:

> On March 13, 2011, the complaining witness was working alone in a small grocery store when two males, whom she had not seen before, entered the store. At that time, there were no other customers in the store. One of the men, Jeffrey Kinzle, asked her to show him where to find the cans of jalapeño peppers. As she led the men toward the canned food area, Kinzle grabbed her buttocks. She asked Kinzle what was going on, and he responded with laughter. The complaining witness told him to pay for the jalapeños and leave the store. She and Kinzle walked to the cash register.
>
> Shortly afterward, the other man, Nathan Wood, asked the complaining witness to show him where the chipotle peppers were located. As she neared that area of the store, Kinzle grabbed her from behind and took her to the canned food area. He held her around the waist, squeezed her buttocks and breast, pulled on her clothing, kissed her neck, and rubbed his penis against her. As she tried to resist, she ended up face-to-face with Kinzle. She tried to push him away and yelled in Spanish for him to let her go. During the incident, Wood remained in a separate area of the aisle and did not observe what took place. After Wood heard

REPORT AND RECOMMENDATION
PAGE - 3

the complaining witness scream, "like [Kinzle] was attacking her," Wood saw
Kinzle run out of the store. The complaining witness ran out of the store and
yelled for help. A bystander helped her call the police.

When the police arrived, Wood told them that Kinzle, his roommate,
attacked the complaining witness. Wood escorted the police to their apartment.
The police questioned Kinzle, arrested him, and transported him to the store.
After viewing Kinzle outside the store, the complaining witness said that she was
confused and did not know whether he was the person who attacked her.

The State charged Kinzle with indecent liberties by forcible compulsion.
Before trial, Kinzle moved to substitute counsel. After two hearings on the matter
in July 2011, the court denied the motion.

In August 2011, the State moved to clarify a potential conflict of interest
between Kinzle and his attorney. The State received information that Kinzle
threatened his attorney and threatened to blow up government buildings and to
kill various people, including the president, police officers, and corrections
deputies. In its motion, the State cautioned, "The State has also considered that
the Defendant may be deliberately manufacturing a situation that would compel
replacement of his attorney." Kinzle's attorney expressed confidence in her ability
to continue representing him. On October 31, 2011, during motions in limine, the
court raised the issue presented in the State's earlier motion. After a colloquy with
Kinzle and his attorney, the court decided that Kinzle's attorney would continue
to represent him.

Kinzle did not testify at trial. The complaining witness testified through an
interpreter. She testified that when Kinzle entered the store, he had brown hair
and blue eyes and wore a hat, blue pants, a jacket, brown shoes, and a red or
burgundy sweatshirt. He also had "a little bit of a beard." When the police brought
Kinzle to the store later that evening, he was clean-shaven. Her testimony
included details that she did not reveal to police during earlier interviews. At trial,
she stated that Kinzle asked her if she wanted to feel his penis, that his fly was
down during the incident, and that she could feel that he had an erection when he
rubbed himself against her.

Wood testified that Kinzle did not appear differently when he was arrested
than he appeared at the time of the incident. Michael Flavin, Kinzle's other
roommate, testified that before police arrived at the apartment, Kinzle shaved and
removed his hat and a gray fleece jacket that had dark sleeves and put on a
sweatshirt. Brent Vannoy, who was in jail with Kinzle, also testified for the State.
He told the court that Kinzle planned to "beat[] his charge" by shaving after the
incident and by acting "crazy and stuff for the Court so they thought he was
looney and get away with what he did."

REPORT AND RECOMMENDATION
PAGE - 4

A jury convicted Kinzle as charged. He had an offender score of five, a total standard range of 77-102 months, and a maximum life term. The court sentenced Kinzle to an indeterminate sentence, with a minimum sentence of 102 months confinement and a maximum sentence of life imprisonment. The sentence included 21 conditions of community custody.

(Dkt. # 21, Ex. 16 at 2-5.)

## C. First Degree Child Molestation (Cause No. 11-1-00710-8)

The Washington Court of Appeals, on direct appeal of Petitioner's conviction under cause number 11-1-00710-8, summarized the facts relevant to Petitioner's child molestation conviction as follows:

On March 17, 2011, Kinzle stayed at the apartment of a friend who lived with his girlfriend, ES, and their two daughters, eight-year-old R and four-year-old N. ES returned to the apartment after Kinzle had gone to bed. She found the girls sitting under a small table in her bedroom. The girls were crying. They told their mother that Kinzle "rubbed some stuff" on their private parts. ES found prescription eye cream in the girls' bedroom. The cream had been stored in the bathroom medicine cabinet. ES called the police and then took the girls to the hospital. Paula Newman Skomski, a forensic nurse examiner employed by the hospital, interviewed and examined both girls.

On March 21, 2011, at the request of a police detective, the girls were interviewed by Razi Leptich, a child interview specialist. The interview was recorded. In response to questions, N, the four-year-old, told Leptich that her "dad's friend" "Jeff" put "eye cream" on her "butt" and "pee-pee." Laboratory testing revealed traces of eye cream on R's underwear and on swabs from both girls' perineal areas.

The State charged Kinzle with two counts of first degree child molestation. At a pretrial hearing on September 10, 2012, the court determined that both R and N were competent to testify and ruled that certain out-of-court statements made by each child were admissible under Washington's statutory exception to the hearsay rule, RCW 9A.44.120.

Kinzle's jury trial occurred September 12-14, 2012. At trial, the prosecutor asked the older girl, R, whether any of her dad's friends were in the courtroom. She identified Kinzle. He asked if she remembered the last time she saw Kinzle at her house. When she said it had been a year, the prosecutor asked, "Is there a particular reason that you don't see him anymore?" R testified, "When he was over, he put stuff on a private part." When the prosecutor asked what she

REPORT AND RECOMMENDATION
PAGE - 5

meant by "stuff" and "private part," R testified, consistent with her previous statements, that Kinzle rubbed "lotion" on her "butt and pee-pee." It is undisputed that Kinzle's right to confront R was not violated and that the State sufficiently proved count 1.

*State v. Kinzle*, 181 Wn. App. 774, 777-78 (2014).

### D.    Global Plea Offer

Underlying many of Petitioner's federal habeas claims is a plea offer which encompassed all three of the cases filed against Petitioner in Snohomish County Superior Court, an offer that Petitioner rejected. The Washington Court of Appeals, in Petitioner's most recent personal restraint proceeding, cause number 74670-7-1, summarized the facts pertaining to Petitioner's claims regarding his rejection of the global plea offer as follows:

Kinzle has a history of mental illness. When he was booked into the Snohomish County Jail (SCJ) in March 2011, he informed jail staff that he was mentally ill and took a number of medications. The jail did not immediately obtain these medications or begin treating Kinzle.

Kinzle was charged with failure to register as a sex offender, indecent liberties, and one count of child molestation. In early April, the Office of Public Defense appointed Cassie Trueblood to represent Kinzle. It appears that Trueblood did not meet with Kinzle for at least two weeks. During this period before their first meeting, Kinzle twice sent kites, or written requests, to the public defender's office asking for a new attorney. App. 37-38. He asserted that Trueblood "refused to do her job." Appendix (App.) 37.

On April 7, the State proposed a plea bargain that encompassed all of the charges. The record contains no evidence concerning Kinzle's response or his discussion with Trueblood about the offer. Kinzle later indicated, however, that he refused the plea against Trueblood's advice.

Near the end of April, Kinzle told jail staff he was experiencing mood swings and asked to resume Lithium treatment.[1] A mental health evaluation was conducted. The mental health professional documented Kinzle's report of rapid

---

[1] [Court of Appeals' footnote 1] Kinzle also asked the jail staff to obtain his previous mental health records. The jail obtained records from September 2009-January 2010. During that time period, Kinzle's only medication was Dexedrine which reportedly improved his ability to focus.

REPORT AND RECOMMENDATION
PAGE - 6

cycling between mania and depression. She evaluated Kinzle having organized thought processes, reality based thought content, no sensory disturbance, and normal intellectual functioning. Kinzle resumed Lithium treatment on May 1.[2]

In June, the State amended the information to add a second count of child molestation. A short time later, Kinzle pleaded guilty to failure to register. At the end of June, the State proposed a second plea offer. Kinzle rejected the offer against Trueblood's advice.

On June 29 and 30, Kinzle addressed five kites to Trueblood. He asked for copies of discovery as well as laws and legal definitions related to his charges. Kinzle also sent a kite to the director of public defense requesting a new attorney. He asserted that Trueblood was doing more to accommodate the prosecutor than to defend him and alleged that she would not fight for him at trial. Id. Kinzle also alleged that Trueblood refused to pursue all of the investigations he requested.

In July, after negotiation with Trueblood, the State renewed its plea offer. Kinzle indicated that he would accept the offer and a hearing was set. Prior to the hearing, Kinzle addressed seven kites to Trueblood asking her to investigate various defense theories.

At the hearing, Kinzle rejected the plea offer and also moved to substitute counsel. He asserted that Trueblood had been trying to "strong arm" him into accepting a plea deal. App. 56. Kinzle explained that, as he was facing a life sentence, he wanted to fight the charges, not plead to them. He also alleged that Trueblood refused his requests to investigate additional evidence, she had not given him copies of the laws and legal definitions requested, and he did not believe he would get a fair trial with her as his attorney.

Trueblood acknowledged there had been a breakdown in communication, especially in the past week. But she stated that she had done substantial investigation and believed she was competent to handle the case. Trueblood left the decision whether to replace her to the court. The court continued the motion one week to allow Kinzle and Trueblood an opportunity to reestablish communication.

When the hearing resumed, Kinzle stated that he had spoken with Trueblood but he was still opposed to her approach concerning plea offers. The court found that the parties were communicating and Trueblood was investigating all of Kinzle's witnesses. The court denied Kinzle's motion to substitute counsel.

---

[2] [Court of Appeals' footnote 2] Records indicate, however, that Kinzle did not always receive the medication as prescribed over the next few months.

REPORT AND RECOMMENDATION
PAGE - 7

1
2
3
4
5

In August, inmates reported to SCJ corrections officers that Kinzle made threatening statements concerning Trueblood and other targets. When informed of these statements, the prosecutor was concerned that Kinzle's threats could provide Trueblood with a motive to want Kinzle to receive a lengthy sentence and could thus be a conflict of interest. The prosecutor raised his concerns in a motion to clarify the potential conflict of interest. At the hearing on the motion, Trueblood stated that she was prepared for trial, she was not afraid of Kinzle, and she felt confident representing him. The court did not issue a ruling but stated that "Ms. Trueblood believes she can adequately represent [Kinzle], and I've heard nothing to the contrary, and off you go." App. 68.

6
7
8

The court address Kinzle's representation again on October 31, the first day of the indecent liberties trial. During motions in limine, the court inquired about the prior motion concerning a conflict of interest and asked Trueblood to address the issue of representation. Trueblood stated that she was prepared for trial and did not see the need for new counsel. The court then addressed Kinzle:

9
10
11
12

> **The Court**: Let me just ask you, given that your attorney has represented that she is prepared to represent you today, she's not concerned about whatever you might have communicated at the jail to other people or whatever threats or whatever may have gone on. . . . So we're ready to go. If that meets with your approval.

13

> **Kinzle**: Yes, sir.

14
15
16

> **The Court:** O.K. . . . I don't see that there's anything carrying over today that would impact Ms. Trueblood's ability to represent Mr. Kinzle. He's indicated today that he's comfortable having Ms. Trueblood continue to represent him, so I don't perceive a conflict that would require . . . any change of attorney to be addressed at this time. . . .

17
18
19
20

Kinzle was convicted of indecent liberties. In a separate trial, he was also convicted of two counts of child molestation. We affirmed his indecent liberties conviction in <u>State v. Kinzle</u>, 174 Wn. App. 1073, 2013 WL 1960159 (2013) (<u>Kinzle I</u>). In <u>State v. Kinzle</u>, 181 Wn. App. 774, 326 P.3d 870 (2014) (<u>Kinzle II</u>), we affirmed one count of child molestation, reversed one count, and remanded for correction of improper community custody conditions.

21

(Dkt. # 67, Ex. 73 at 2-5.)

22
23

REPORT AND RECOMMENDATION
PAGE - 8

## IV.    PROCEDURAL HISTORY

### A.    State Court Procedural History

Petitioner did not appeal his failure to register conviction, though he did seek direct review of his indecent liberties and first degree child molestation convictions. Petitioner also sought collateral review with respect to all three convictions.

#### 1.    *Indecent Liberties (Cause No. 11-1-00709-4)*

Petitioner appealed his indecent liberties conviction and sentence to the Washington Court of Appeals. (*See* Dkt. # 21, Exs. 11, 12, 13, 14, 15.) On May 13, 2013, the Court of Appeals issued an unpublished opinion affirming Petitioner's conviction, but remanding to the superior court a portion of Petitioner's judgment and sentence which the parties agreed contained improper community custody provisions. (*Id*., Ex. 16.)

Petitioner subsequently sought review in the Washington Supreme Court. (*Id*., Ex. 20.) Petitioner presented the following five issues to the Supreme Court for review: (1) the trial court erred by failing to adequately inquire into the conflict between Petitioner and his attorney; (2) the trial court erred by failing to order a competency hearing; (3) there was insufficient evidence presented at trial to prove the element of forcible compulsion; (4) Petitioner's sentence authorizing lifetime incarceration constitutes cruel and unusual punishment; and, (5) cumulative error deprived Petitioner of a fair trial. (*See id*.) On December 11, 2013, the Supreme Court denied review without comment, and the Court of Appeals issued its mandate terminating direct review on March 21, 2014. (*Id*., Exs. 21, 22.) On October 15, 2014, the trial court amended the conditions of community custody in accordance with the Court of Appeals' remand directive. (Dkt. # 33, Ex. 30.)

REPORT AND RECOMMENDATION
PAGE - 9

On August 12, 2013, while his petition for review was pending in the Washington Supreme Court, Petitioner filed a *pro se* personal restraint petition in the Supreme Court challenging his indecent liberties conviction. (Dkt. # 21, Ex. 23.) Petitioner raised a single ground for relief in his petition, asserting that an actual conflict of interest existed between him and his appointed counsel which deprived him of effective assistance of counsel. (*Id.*) On April 11, 2014, the Commissioner of the Supreme Court issued a ruling dismissing Petitioner's personal restraint petition, concluding that Petitioner's argument regarding an alleged conflict of interest had been considered and rejected on direct appeal. (*Id.*, Ex. 26.) The Supreme Court issued a certificate of finality in that proceeding on June 6, 2014. (*Id.*, Ex. 27.)

2.    *First-Degree Child Molestation (Cause No. 11-1-00710-8)*

Petitioner appealed his first degree child molestation convictions and sentence to the Washington Court of Appeals. (Dkt. # 46, Exs. 53, 54, 55.) On June 16, 2014, the Court of Appeals issued a published opinion affirming Petitioner's conviction on one of the two counts of first degree child molestation, reversing Petitioner's conviction on the second count, and remanding the judgment and sentence for correction of the conditions of community custody. (*Id.*, Ex. 56.)

Petitioner subsequently filed a petition for review in the Washington Supreme Court in which he raised a single ground for review, asserting that the trial court's instructions misinformed the jury of its deliberative role. (*Id.*, Ex. 57.) The Supreme Court denied the petition for review without comment on November 5, 2014, and the Court of Appeals issued its mandate terminating direct review on December 10, 2014. (*Id.*, Exs. 58, 59.) On February 5, 2015, Petitioner was resentenced on the single count of first degree child molestation upheld on appeal to an indeterminate maximum term of life imprisonment, with a minimum term of 171 months.

REPORT AND RECOMMENDATION
PAGE - 10

1   (*See* Dkt. # 33, Ex. 31.) The second count, which was reversed on appeal, was dismissed. (*See*

2   *id*.)

3          On September 13, 2013, while his direct appeal was pending in the Court of Appeals,

4   Petitioner filed a *pro se* personal restraint petition in the Washington Supreme Court challenging

5   his first degree child molestation convictions. (Dkt. # 46, Ex. 60.) Petitioner raised two grounds

6   for relief, asserting that (1) his pre-trial defense counsel had a conflict of interest, and (2) that he

7   was actually innocent of the charges. (*Id.*, Ex. 60 at 2.) The petition was apparently transferred to

8   the Washington Court of Appeals and, on November 20, 2013, the Court of Appeals issued an

9   order staying the personal restraint petition pending issuance of a mandate in Petitioner's direct

10  appeal. (*Id.*, Ex. 61.) On November 20, 2014, the Federal Public Defender appeared on behalf of

11  Petitioner and moved to voluntarily dismiss the personal restraint petition without prejudice. (*Id.*,

12  Exs. 62, 63.) On December 22, 2014, the Court of Appeals granted the motion to dismiss and, on

13  February 20, 2015, the Court of Appeals issued a certificate of finality in that proceeding. (*Id.*,

14  Exs. 64, 65.)

15          3.      *Personal Restraint Petition Challenging All Convictions*

16          On February 4, 2016, after a stay had been entered in this proceeding, Petitioner, through

17  counsel, filed a personal restraint petition in the Washington Court of Appeals challenging all

18  three of his convictions. (Dkt. # 67, Ex. 67.) Petitioner raised two grounds for relief, asserting

19  that defense counsel rendered ineffective assistance when she (1) failed to consider, investigate,

20  and evaluate Petitioner's mental state and thereby deprived him of the ability to understand and

21  intelligently consider a favorable plea offer, and (2) refused to join Petitioner's request for new

22  counsel, followed an office policy of not moving to withdraw, and failed to fully inform the

23

REPORT AND RECOMMENDATION
PAGE - 11

1    judges in Petitioner's case about the nature and extent of the conflict between her and Petitioner.

2    (*Id.*, Ex. 67 at 28, 35.) The petition was referred to a three-judge panel for review. (*Id.*, Ex. 72.)

3    On September 11, 2017, the Court of Appeals issued an unpublished opinion denying the

4    petition. (*Id.*, Ex. 73.) The court declined to consider the merits of Petitioner's claim concerning

5    the breakdown in the attorney-client relationship because the claim was considered and rejected

6    on direct appeal. (*Id.*, Ex. 73 at 6-9.) With respect to Petitioner's claim that counsel failed to

7    investigate his mental state, the court determined that the link between counsel's alleged

8    deficiency and Petitioner's rejection of the plea offer was "speculative and tenuous" and that he

9    had failed to establish he was prejudiced by counsel's performance. (*Id.*, Ex. 73 at 10-11.)

10    Petitioner thereafter filed a motion for discretionary review in the Washington Supreme

11    Court in which he raised the same issues as were raised in his personal restraint petition. (*Id.*, Ex.

12    74 at 1-2.) On February 14, 2018, the Commissioner of the Supreme Court issued a ruling

13    denying review. (*Id.*, Ex. 75.) As to Petitioner's claim concerning the breakdown in his

14    relationship with counsel, the Commissioner held that the claim was untimely because it

15    pertained only to Petitioner's indecent liberties conviction which became final on October 15,

16    2014, well over a year before Petitioner filed his personal restraint petition in February 2016.

17    (*Id.*, Ex. 75 at 4.) With respect to Petitioner's claim that counsel failed to investigate his mental

18    state, the Commissioner agreed with the Court of Appeals that the claim was too speculative to

19    warrant review. (*Id.*, Ex. 75 at 5.)

20    Petitioner moved to modify the Commissioner's ruling, but that motion was denied

21    without comment on May 2, 2018. (*Id.*, Exs. 76, 77.) The Court of Appeals issued a mandate in

22    Petitioner's personal restraint proceedings on May 18, 2018. (*Id.*, Ex. 78.)

23

REPORT AND RECOMMENDATION
PAGE - 12

**B.**    **Federal Court Procedural History**

Petitioner initiated this action on May 12, 2014, with the submission of a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging only his indecent liberties conviction. (*See* Dkt. # 1.) The Court declined to serve Petitioner's original petition because Petitioner failed to name a proper respondent, but Petitioner was granted leave to file an amended petition correcting this deficiency. (Dkt. # 5.) Petitioner filed an amended petition on June 9, 2014, and the Court thereafter ordered the petition served on Respondent. (Dkt. ## 6, 7.) The Court subsequently appointed the Federal Public Defender to represent Petitioner in this action. (Dkt. # 17.)

On August 18, 2014, Respondent filed his answer to Petitioner's amended petition. Petitioner was thereafter granted multiple extensions of time to file a response to Respondent's answer. (*See* Dkt. ## 23, 24, 25, 26, 27, 29.) On March 26, 2015, Petitioner filed a motion to amend his petition, in lieu of a response. (Dkt. # 28.) Petitioner's unopposed motion to amend his petition was granted on April 20, 2015, and his second amended petition was filed. (Dkt. ## 41, 42.) In his second amended petition, Petitioner sought to challenge his convictions in all three of his Snohomish County Superior Court cases (cause numbers 11-1-00617-9, 11-1-00709-4, and 11-1-00710-8). (Dkt. # 42.) Respondent filed an answer to the second amended petition on June 4, 2015. (Dkt. # 44.)

On August 19, 2015, United States Magistrate Judge James Donohue, issued a Report and Recommendation recommending that Petitioner's second amended petition be dismissed as a mixed petition containing both exhausted and unexhausted claims. (Dkt. # 49.) Shortly thereafter, Petitioner filed a motion to stay and abey this action while he returned to state court to litigate his unexhausted claims. (Dkt. # 50.) On November 5, 2015, United States District Judge

REPORT AND RECOMMENDATION
PAGE - 13

John C. Coughenour granted Petitioner's motion to stay and abey. (Dkt. # 52.) The stay was

lifted in May 2018 after Petitioner's state court proceedings concluded. (*See* Dkt. ## 55, 56.)

Petitioner filed a third amended petition on September 25, 2018 (dkt. # 60), and Respondent filed

an answer thereto on February 6, 2019 (dkt. # 66). Petitioner filed a response to Respondent's

answer on April 15, 2019 (dkt. # 71), and Respondent, at the Court's direction, filed a reply to

Petitioner's response on July 5, 2019 (*see* dkt. ## 76, 77). The briefing is now complete, and this

matter is ripe for review.

## V.    GROUNDS FOR RELIEF

Petitioner identifies five grounds for relief in his third amended habeas petition:

GROUND ONE: Defense counsel's failure to consider, investigate, and evaluate Mr. Kinzle's mental state was ineffective and prejudiced Mr. Kinzle by depriving him of the ability to understand and intelligently consider a favorable plea offer, an offer he would have accepted. This violated Mr. Kinzle's Sixth Amendment right to effective assistance of counsel.

GROUND TWO: Mr. Kinzle's attorney provided ineffective assistance of counsel and deprived him of his Sixth Amendment right to counsel by (1) Refusing to join in Mr. Kinzle's request for a new lawyer despite acknowledging that the relationship was irreconcilably broken; (2) Following an office policy of not moving to withdraw even if the Rules of Professional Conduct require withdrawal; and (3) Failing to fully inform the judges at subsequent hearings about the nature and extent of the conflict. Mr. Kinzle was prejudiced, because had the court replaced his first attorney, he would have received effective assistance of counsel with respect to his plea offer.

GROUND THREE: Mr. Kinzle's Sixth Amendment right to counsel was violated by the trial court's improper denial of his motion for substitute counsel when he had an irreconcilable conflict with his appointed attorney and Mr. Kinzle was prejudiced.

GROUND FOUR: Mr. Kinzle's Fourteenth Amendment right to due process was violated by the trial court's failure to order a competency hearing where there was a *bona fide* doubt as to Mr. Kinzle's competency to proceed to trial.

GROUND FIVE: Mr. Kinzle was deprived of his Sixth Amendment right to effective assistance of counsel by his lawyer's failure to properly investigate the

REPORT AND RECOMMENDATION
PAGE - 14

identification procedures in this case, and failing to file a meritorious motion to suppress the victim's in-court identification of the defendant. The in-court identification made by the victim was a critical component of the prosecution's case and thus Mr. Kinzle was prejudiced.

(*See* Dkt. # 60 at 32, 40, 45, 50, 54-55.)

## VI.    DISCUSSION

Respondent asserts in his answer to Petitioner's third amended petition that Petitioner presented his first four grounds for relief to the Washington Supreme Court and therefore properly exhausted those claims in accordance with 28 U.S.C. § 2254(b). (Dkt. # 66 at 11.) Respondent argues, however, that Petitioner is not entitled to relief with respect to any of those claims. (*See id*. at 16-45.) Respondent further asserts, and Petitioner concedes, that Petitioner did not present his fifth ground for relief to the state courts at any time. (*See id*. at 11.) Respondent argues that that claim is procedurally barred and without merit. (*Id*. at 45-54.)

### A.    Standard of Review for Exhausted Claims

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

REPORT AND RECOMMENDATION
PAGE - 15

1    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

2    court identifies the correct governing legal principle from the Supreme Court's decisions, but

3    unreasonably applies that principle to the facts of the prisoner's case. *See id.* at 407-09.

4        The Supreme Court has made clear that a state court's decision may be overturned only if

5    the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

6    Supreme Court has also explained that "[a] state court's determination that a claim lacks merit

7    precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

8    of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough*

9    *v. Alvarado*, 541 U.S. 652, 664 (2004)).

10       Clearly established federal law means "the governing legal principle or principles set

11   forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

12   at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

13   legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

14   to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

15   952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

16       In considering a habeas petition, this Court's review "is limited to the record that was

17   before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

18   170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

19   state court, such determination shall be presumed correct, and the applicant has the burden of

20   rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

21   § 2254(e)(1).

22

23

REPORT AND RECOMMENDATION
PAGE - 16

**B.    Evidentiary Hearing**

Petitioner requests that he be granted an evidentiary hearing in this matter. (*See* Dkt. # 60 at 61.) Respondent argues that no evidentiary hearing is required. (Dkt. # 66 at 14-15.) The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.  A hearing is not required if the allegations would not entitle Petitioner to relief under 28 U.S.C. § 2254(d).  *Id.* "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011). This Court finds it unnecessary to hold an evidentiary hearing because Petitioner's claims may be resolved on the existing state court record.

**C.    Analysis**

**1.    *Ineffective Assistance of Counsel: Failure to Investigate Mental State***

Petitioner asserts in his first ground for federal habeas relief that the attorney appointed to represent him in his failure to register and indecent liberties cases, assistant Snohomish County public defender Cassie Trueblood, provided ineffective assistance when she failed to consider, investigate, and evaluate Petitioner's mental state, and therefore failed to ensure that he was being properly medicated while he was in the Snohomish County Jail awaiting trial. (Dkt. # 60 at 34-36.) Petitioner alleges that counsel's deficiencies in relation to his mental state deprived him of the ability to understand and intelligently consider a favorable plea offer, an offer he claims he would have accepted had he had reasonably effective representation. (*See id*. at 34-36, 39.)

REPORT AND RECOMMENDATION
PAGE - 17

1    Respondent argues that the state courts reasonably rejected this claim in Petitioner's most recent

2    personal restraint proceedings. (Dkt. # 66 at 16, 24-27.)

3            The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

4    counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-

5    assistance claim is that counsel's unprofessional errors so upset the adversarial balance between

6    defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."

7    *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel

8    are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must

9    prove (1) that counsel's performance was deficient and, (2) that the deficient performance

10   prejudiced the defense. *Strickland*, 466 U.S. at 687.

11           With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

12   performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of

13   counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney

14   performance requires that every effort be made to eliminate the distorting effects of hindsight, to

15   reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

16   counsel's perspective at the time." *Id*. at 689. In order to prevail on an ineffective assistance of

17   counsel claim, a petitioner must overcome the presumption that counsel's challenged actions

18   might be considered sound trial strategy. *Id*.

19           The second prong of the *Strickland* test requires a showing of actual prejudice related to

20   counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

21   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

22   would have been different. A reasonable probability is a probability sufficient to undermine

23

REPORT AND RECOMMENDATION
PAGE - 18

confidence in the outcome." *Id*. at 694. The reviewing court need not address both components

of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

In circumstances where a plea bargain has been offered, "a defendant has the right to

effective assistance of counsel in considering whether to accept it. If that right is denied,

prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on

more serious charges or the imposition of a more severe sentence." *Lafler v. Cooper*, 566 U.S.

156, 168 (2012).

While the Supreme Court established in *Strickland* the legal principles that govern claims

of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S.

101. Rather, when considering an ineffective assistance of counsel claim on federal habeas

review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be

granted a deference and latitude that are not in operation when the case involves review under

the *Strickland* standard itself." *Id*.

The Washington Court of Appeals, in Petitioner's most recent personal restraint

proceedings, rejected Petitioner's claim that counsel was deficient in failing to investigate his

mental health. The panel explained its conclusion as follows:

> In this personal restraint petition, Kinzle asserts that Trueblood was
> deficient in failing to investigate his mental health despite numerous facts that
> should have alerted her that he was mentally ill. The State contends that this claim
> simply recasts the issue of whether Kinzle was competent to assist in his own
> defense. Kinzle disputes that his competency is at issue here. He contends that,
> regardless of whether he was incompetent, his mental illness was at the root of his
> problems with counsel and his refusal of the plea offer.

REPORT AND RECOMMENDATION
PAGE - 19

Kinzle's claim here is closely related to the competency issue considered in Kinzle I. In the direct appeal, however, we examined whether the evidence before the trial court indicated that Kinzle was incompetent. Here, the question is whether the facts available to Trueblood created an obligation that she investigate Kinzle's mental health. Because that issue was not addressed on direct appeal, we consider it here.

We first consider whether Kinzle has established prejudice. To obtain relief in a personal restraint petition, a petitioner must show that he was actually prejudiced by each claimed constitutional error. In re Pers. Restraint Petition of Rice, 118 Wn.2d 876, 884, 828 P.2d 1086 (1992). A petitioner shows that he was prejudiced by ineffective assistance of counsel by establishing that, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. Strickland, 466 U.S. at 687. Where ineffective assistance allegedly causes a defendant to reject a plea offer, a defendant must show a reasonable probability that, but for the ineffective advice of counsel, he would have accepted the plea. Lafler v. Cooper, 566 U.S. 156, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012).

Kinzle asserts that he "would have accepted the original plea offer, had he—with proper medication—been in a mental state to appreciate his legal situation and had communications between his counsel and him not completely broken down." PRP at 34. He relies on his own 2015 declaration, in which he states that his mental illness impeded his ability to understand Trueblood and that if he had "been mentally stable and been able to trust Ms. Trueblood's advice," he would have accepted the offer.[3] App. 14. Kinzle also relies on the declaration of his expert, psychologist Alan Breen, who opined that the initial dose of Lithium prescribed was unlikely to have been optimal and that Kinzle likely continued to have symptoms of mania even after he began treatment. And Kinzle argues that, given the strength of the State's case, any rational defendant would have accepted the plea offer.

The link that Kinzle posits between Trueblood's alleged deficiency and his refusal of the plea offer is speculative and tenuous. His argument assumes that, had Trueblood investigated his mental health, she would have ordered a mental health evaluation. It further assumes that the results of the new evaluation would have been different from those of the mental health evaluation administered on April 26. Kinzle's argument further assumes that, in response to this hypothetical

---

[3] [Court of Appeals' footnote 4] Kinzle asserts that a petitioner's own statement suffices to establish that he would have accepted the plea offer but for his attorney's deficient performance. He relies on the Sixth Circuit decision underlying Lafler. The case is distinguishable. In Lafler, defense counsel provided erroneous legal information and, based on that information, advised the defendant to reject a plea offer. Cooper v. Lafler, 376 Fed. App'x. 563, 570 (6th Cir. 2010). In a habeas petition following his conviction, the defendant argued that he would have accepted the plea offer but for his attorney's erroneous advice. Id. His trial attorney confirmed the statement and the circumstances lent credence to the claim. Id. at 572.

REPORT AND RECOMMENDATION
PAGE - 20

1    evaluation, the SCJ would have modified Kinzle's treatment. Meanwhile,
2    Trueblood would have continued the cases and, at some point, the treatment
     would have altered Kinzle's mental state to such a degree that he would have
3    accepted Trueblood's advice to accept the plea offer despite his professed desire
     to make the State prove the case against him. Kinzle points to no case in which a
4    defendant established prejudice through a similarly tenuous connection. He fails
     to establish a reasonable probability that, but for the alleged deficient
5    representation, he would have accepted the plea. Kinzle fails to establish that he
     was prejudiced by Trueblood's performance.[4]

6    (Dkt. # 67, Ex. 73 at 9-11.)

7          The Washington Supreme Court Commissioner agreed with the Court of Appeals'

8    resolution of this claim, explaining his conclusion as follows:

9          Ms. Trueblood's claimed deficiency in investigating and procuring
           treatment for Mr. Kinzle's mental condition does go to the plea offers and
10         therefore is arguably timely as to all convictions. But I agree with the Court of
           Appeals that Mr. Kinzle does not show, as he must, that there is a reasonable
11         probability the outcome would have been different in the absence of the deficient
           performance. *See In re Pers. Restraint of Crace,* 174 Wn.2d 835, 842, 280 P.3d
12         1102 (2012). This argument hinges on Mr. Kinzle's assertion that, had Ms.
           Trueblood investigated his condition and procured proper treatment, he would
13         have been in a stable mental state under which he would have accepted the State's
           plea offer. But this claim is simply too speculative to entitle Mr. Kinzle to relief. I
14         agree with Mr. Kinzle that his own declaration to this point, though self-serving,
           is relevant. *In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 641, 362 P.3d
15         758 (2015). Still, as the Court of Appeals observed, Mr. Kinzle's argument rests
           on a tenuous chain of causation that would have purportedly resulted in Mr.
16         Kinzle reaching a certain mental state, under which he would have followed Ms.
           Trueblood's advice to accept the plea offer rather than insist on going to trial. It is
17         one thing for a defendant to plausibly assert that he would have accepted a plea
           offer had counsel not provided erroneous legal advice on the consequences of
18         going to trial. *See Cooper v. Lafler*, 376 Fed. Appx. 563, 571 (6th Cir. 2010),
           *vacated*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). But how Mr.
19         Kinzle may have judged a plea offer under a different mental state is wholly
           speculative, despite Mr. Kinzle's assertion. He fails to show that under the
20         circumstances of this case the choice to make the State prove the charges at trial

21

22   [4] [Court of Appeals' footnote 5] In light of our disposition, we do not consider Kinzle's claim that Trueblood's
     performance was deficient. In re Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). ("We need not consider both
23   prongs of Strickland (deficient performance and prejudice) if a petitioner fails on one.") (quoting Strickland, 466
     U.S. at 697).

was one that a person in a stable mental condition could not have reasonably made.

(*Id.*, Ex. 75 at 5.)

Petitioner spends considerable time on arguments relating to counsel's alleged deficiencies in the plea process. (*See* Dkt. # 71 at 3-15.) However, the Court need not address those arguments as the state courts limited their discussion to whether Petitioner was prejudiced by counsel's alleged deficiencies and Petitioner's first ground for relief can be readily resolved on this single prong of the *Strickland* test.

With respect to the issue of prejudice, Petitioner argues that the Washington Supreme Court Commissioner's decision was contrary to the United States Supreme Court's decisions in *Strickland* and *Lafler v. Cooper*, 566 U.S. 156 (2012). (*Id.* at 15-17.) Petitioner focuses his argument on the final sentence of the Commissioner's decision, insisting that he was required to meet a more demanding standard of showing that "the choice to make the state prove the charges at trial was one that a person in a stable mental condition could not have reasonably made," rather than the *Strickland/Lafler* standard of showing that there was a "reasonable probability" he would have accepted the plea had counsel rendered effective assistance. (*See id.*)

However, as Respondent correctly points out, a panel of the Washington Court of Appeals actually adjudicated the merits of Petitioner's ineffective assistance of counsel claim, while the Supreme Court Commissioner simply reviewed the Court of Appeals' decision to determine if discretionary review of the decision was warranted under the Washington Rules of Appellate Procedure. (*See* Dkt. # 67, Ex. 75.) The Commissioner repeatedly referenced the Court of Appeals' decision in his ruling and concluded that discretionary review was not warranted because Petitioner had not shown "that he is raising issues of substantial public interest or

REPORT AND RECOMMENDATION
PAGE - 22

1    constitutional issues of sufficient significance to merit this court's review of the Court of

2    Appeals decision." (*Id.*, Ex. 75 at 6.) The Commissioner's ruling cannot be read without

3    reference to the Court of Appeals' decision.

4         The Court of Appeals clearly applied the appropriate *Strickland/Lafler* standard in

5    considering whether Petitioner was prejudiced by counsel's alleged deficient conduct and

6    reasonably concluded that he was not. (*See id.*, Ex. 73 at 9-11.) The Supreme Court

7    Commissioner effectively endorsed this conclusion in his ruling denying review. (*Id.*, Ex. 75 at

8    5.) While the final sentence of the Commissioner's ruling is admittedly awkward, this Court is

9    not persuaded that it improperly altered the prejudice standard applied to Petitioner's ineffective

10   assistance of counsel claim.

11        Petitioner also argues that the Commissioner's decision was based on an unreasonable

12   determination of the facts in light of the evidence presented in Petitioner's personal restraint

13   proceedings. (Dkt. # 71 at 17-18.) Petitioner faults the Commissioner for relying solely on

14   Petitioner's declaration in concluding that the causal chain between being properly medicated

15   and rejecting the plea was too tenuous. (*Id.* at 17.) Petitioner maintains that in addition to his

16   declaration stating that he would have pled guilty had he been mentally stable, he provided

17   objective evidence of his decision making before and after his medication issues were properly

18   addressed. (*Id.*) Petitioner cites to the psychiatric intake evaluation performed at the Washington

19   State Penitentiary in August 2014 after he entered Washington Department of Corrections

20   ("DOC") custody (dkt. # 61, Ex. A-33), and a psychiatric progress note entered in September

21   2018 (dkt. # 75, Ex. A-115), which appear to show improvement in Petitioner's mental stability

22   as his Lithium doses were increased. Petitioner asserts that at the time he executed his

23

REPORT AND RECOMMENDATION
PAGE - 23

declaration stating he would have pled guilty, he was being properly medicated. (Dkt. # 71 at 18.)

While it does appear that the medications Petitioner has been provided since his entry into DOC custody have been beneficial to him, this evidence does nothing to undermine the state courts' conclusion that the causal chain between counsel's alleged deficiencies and Petitioner's rejection of the plea offer is too tenuous to establish actual prejudice. Though Petitioner is now clearly regretting the fact that he did not accept the plea offer, he has simply not demonstrated that there is a reasonable probability he would have accepted the offer had counsel taken the steps he now believes she should have taken to investigate and evaluate his mental state. The state courts' application of *Strickland* was reasonable and Petitioner's first ground for federal habeas relief should therefore be denied.

> 2. *Ineffective Assistance of Counsel: Failure to Join Motion for New Counsel*

Petitioner asserts in his second ground for federal habeas relief that his attorney provided ineffective assistance by (1) refusing to join in Petitioner's request for new counsel despite acknowledging the relationship was irretrievably broken, (2) following an office policy of not moving to withdraw, and (3) failing to fully inform the trial judges about the nature and extent of the communication problems between Petitioner and herself. (*See* Dkt. # 60 at 42.) Respondent argues that this claim, as presented in the third amended petition, is procedurally barred. (Dkt. # 66 at 27.)

The claim asserted by Petitioner in his second ground for relief was first presented to the state courts in Petitioner's most recent personal restraint petition. (*See* Dkt. # 67, Ex. 67 at 35.) The Washington Court of Appeals declined to consider the claim because it had already held on direct appeal of Petitioner's indecent liberties conviction that the trial court did not err in denying

REPORT AND RECOMMENDATION
PAGE - 24

1    Petitioner's motion to substitute counsel. (*Id*., Ex. 73 at 7-8.) The Washington Supreme Court

2    Commissioner declined to address the Court of Appeals' rationale upon concluding that the

3    claim was time barred under RCW 10.73.090 because Petitioner's personal restraint petition was

4    filed more than one year after his indecent liberties conviction became final in October 2014.

5    (*Id*., Ex. 75 at 4.)

6        When a prisoner defaults on his federal claims in state court pursuant to an independent

7    and adequate state procedural rule, federal habeas review of the claims is barred unless the

8    prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

9    violation of federal law, or demonstrate that failure to consider the claims will result in a

10   fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If the last

11   state court to decide the issue clearly and expressly states that its judgment rests on a state rule of

12   procedure, the habeas petitioner is barred from asserting the same claim in a later federal habeas

13   proceeding.[5] *Harris v. Reed*, 489 U.S. 255 (1989).

14       For a state procedural rule to be "independent," the state law ground for decision must

15   not rest primarily on federal law or be interwoven with federal law. *Coleman*, 501 U.S. at 734-35

16   (citing *Michigan v. Long,* 463 U.S. 1032, 1040–41 (1983)). A state procedural rule is "adequate"

17   if it was "firmly established" and "regularly followed" at the time of the default. *Beard v.*

18   *Kindler*, 558 U.S. 53, 60 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). A state

19   procedural rule is not rendered inadequate simply because it is discretionary. *Id*. at 60-61. The

20   Ninth Circuit has recognized that the state time bar statute invoked by the Washington Supreme

21   Court to bar the ineffective assistance of counsel claim asserted in Petitioner's second ground for

22

23   [5] A petitioner also defaults on a federal habeas claim when he fails to exhaust his state court remedies with respect to that claim and the court to which petitioner would be required to present his claim in order to satisfy the exhaustion requirement would now find the claim to be procedurally barred. *Coleman*, 501 U.S. at 735 n.1.

REPORT AND RECOMMENDATION
PAGE - 25

1   relief, RCW 10.73.090, provides an independent and adequate state procedural ground to bar

2   federal habeas review. *See Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Shumway v.*

3   *Payne*, 223 F.3d 982, 989 (9th Cir. 2000).

4       Petitioner does not challenge the assertion that he procedurally defaulted on his second

5   ground for federal habeas relief. He argues instead that his procedural default should be excused

6   under the rule announced by the United States Supreme Court in *Martinez v. Ryan*, 566 U.S. 1

7   (2012). (Dkt. # 71 at 20-21.) In *Martinez*, the Supreme Court announced a limited qualification

8   to the holding in *Coleman* that an attorney's ignorance or inadvertence in a post-conviction

9   proceeding does not establish cause which excuses procedural default. *See Martinez*, 566 U.S. at

10  9. The narrow exception recognized in *Martinez* is that the absence of counsel, or the inadequate

11  assistance of counsel, in an initial-review collateral proceeding may establish cause for a claim

12  of ineffective assistance at trial. *See id.* at 14.

13      *Martinez* makes clear that, in addition to establishing cause for the procedural default by

14  demonstrating the absence or inadequate assistance of counsel, a federal habeas petitioner must

15  also demonstrate that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial

16  one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. Stated

17  another way, an ineffective assistance of trial counsel claim is "insubstantial" if "it does not have

18  any merit or . . . is wholly without factual support[.]" *Id*. at 16. Because Petitioner did not have

19  counsel in the relevant state court collateral proceedings; *i.e.*, Petitioner's first personal restraint

20  proceeding filed in 2013, the only question this Court need address relative to *Martinez* is

21  whether Petitioner's ineffective assistance of trial counsel claim is substantial.

22      Petitioner argues that his claim regarding defense counsel's conduct in relation to his

23  request for new counsel is substantial and is supported by an extensive record including

REPORT AND RECOMMENDATION

PAGE - 26

1    Petitioner's own declaration, the declaration of a mental health expert, and the declaration of a

2    *Strickland* expert. (Dkt. # 71 at 21.) Petitioner asserts that if counsel had acted appropriately and

3    either joined in his request for a new lawyer, or fully informed the various judges who

4    considered his request for new counsel about the nature and extent of the conflict between the

5    two, new counsel would have been appointed. (Dkt. # 60 at 44-46.) Petitioner further asserts that

6    if he had been provided a new attorney, he would have received effective assistance with respect

7    to the plea offer. (*See id*. at 42, 46; Dkt. # 71 at 23-24.)

8         As explained above, in order to establish a claim of ineffective assistance of counsel, a

9    petitioner must demonstrate (1) that counsel's performance was deficient and, (2) that the

10   deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This claim, like

11   Petitioner's first ground for relief, can be resolved based solely on the prejudice prong of the

12   *Strickland* test.[6] Petitioner speculates that if counsel had withdrawn, or been removed, from his

13   case during pretrial proceedings, he would have been provided a new attorney who would have

14   convinced him to accept the original plea offer or a comparable one.

15        While Petitioner maintains today, after suffering the consequences of having not accepted

16   a favorable plea offer, that he would have accepted the plea if only counsel had acted reasonably

17   or he had been appointed a new attorney, the Court cannot overlook the fact that at that point in

18   the proceedings Petitioner had indicated a desire to make the state prove the case against him and

19   had expressed his belief that he would be able "beat" the indecent liberties charge. (*See* Dkt. #

20

21   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [6] It is noteworthy, if not dispositive of this claim, that the Washington Court of Appeals, on direct appeal of
     Petitioner's indecent liberties conviction, denied Petitioner's claim that the trial court erred when it denied his

22   motion to substitute counsel, and that the Court of Appeals, in Petitioner's most recent personal restraint
     proceedings, declined to consider the claim of ineffective assistance in relation to Petitioner's efforts to replace his
     attorney because it had rejected his claim that the attorney-client relationship was irreconcilably broken on direct

23   appeal. (Dkt. # 67, Ex. 73 at 7-8.)

REPORT AND RECOMMENDATION
PAGE - 27

67, Ex. 67, Appen. 56, 57.) Once again, the link between counsel's alleged deficiencies and Petitioner's refusal to plead guilty is too tenuous to effectively establish prejudice.[7] Petitioner's second ground for federal habeas relief should therefore be denied.

### 3.    Denial of Motion for Substitute Counsel

Petitioner asserts in his third ground for federal habeas relief that the trial court violated his right to counsel when it refused to appoint new counsel for Petitioner in light of his irreconcilable conflict with his appointed counsel. (Dkt. #60 at 47-52.) Respondent argues that this claim is without merit. (Dkt. # 66 at 34-40.)

The Sixth Amendment not only guarantees a criminal defendant counsel of reasonable competence, it also guarantees a right to representation free of conflicts. *Wood v. Georgia*, 450 U.S. 261, 272 (1981). The Sixth Amendment does not, however, guarantee an accused a "meaningful attorney-client relationship." *See Morris v. Slappy*, 461, U.S. 1, 13-14 (1983). Thus, not every conflict between an accused and his counsel implicates the Sixth Amendment. *See Schell v. Witek*, 218 F.3d 1017, 1027 (9th Cir. 2000).

The Ninth Circuit has held that a conflict between an accused and his counsel only infringes on the accused's Sixth Amendment rights "where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson v. Lambert*, 504 F.3d 873 (9th Cir. 2007) (citing *Schell*, 218 F.3d at 1026); *accord Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005) (nature and extent of conflict

---

[7] Petitioner asserts in his response to Respondent's answer that his first and second grounds for relief are overlapping as to the issue of prejudice, and that counsel's representation with respect to the plea offer and the conflict cumulatively prejudiced him by depriving him of effective assistance of counsel in relation to the plea offers. (Dkt. # 71 at 23.) However, Petitioner has not adequately established prejudice with respect to either his first or second grounds for relief because the link between counsel's alleged deficiencies and his refusal to plead guilty is simply too tenuous. There is no cumulative prejudice because there has not been a showing of any prejudice at all.

REPORT AND RECOMMENDATION
PAGE - 28

must be so great as to "depriv[e] the defendant of representation guaranteed by the Sixth

Amendment"). "Disagreements over strategical or tactical decisions do not rise to [the] level of a

complete breakdown in communication." *Stenson* 504 F.3d at 886 (citing *Schell*, 218 F.3d at

1026).

The Ninth Circuit has identified three factors a court should consider in determining

whether an irreconcilable conflict existed: (1) the extent of the conflict; (2) whether the trial

judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the

motion to substitute counsel. *Stenson*, 504 F.3d at 886; *Daniels*, 428 F.3d at 1197.

The Washington Court of Appeals, on direct appeal of Petitioner's indecent liberties

conviction, rejected Petitioner's claim that the trial court erred in rejecting his request for

substitute counsel. The Court explained its conclusion as follows:

> Kinzle first claims that the trial court denied him effective assistance of
> counsel when it denied his motion for new counsel. He asserts that he and his
> attorney had "an ongoing, intractable conflict" that "amounted to a total
> breakdown in communications." He argues that "instead of inquiring into that
> conflict," the court improperly focused its inquiry on trial counsel's competence.
> The State counters that Kinzle's concerns "related primarily to tactics, strategy
> and his lost confidence in his attorney."

> We review for abuse of discretion a trial court's decision to deny a motion
> to substitute counsel. If the attorney-client relationship "completely collapses, the
> refusal to substitute new counsel violates the defendant's Sixth Amendment right
> to effective assistance of counsel." A defendant "must show good cause" before
> the trial court will allow a substitution of counsel, "such as a conflict of interest,
> an irreconcilable conflict, or a complete breakdown in communication between
> the attorney and the defendant."

> A defendant is not entitled to a particular lawyer with whom he thinks he
> can have a meaningful attorney-client relationship. A general loss of confidence
> or trust alone is insufficient to substitute new counsel. The attorney and the
> defendant must be "so at odds as to prevent presentation of an adequate defense."
> To determine whether the trial court properly denied Kinzle's motion to substitute
> counsel, we consider (1) the nature and extent of the alleged conflict, (2) the

REPORT AND RECOMMENDATION
PAGE - 29

adequacy of the court's inquiry, and (3) the timeliness of the motion. We hold that the trial court did not abuse its discretion when it denied Kinzle's motion.

Regarding the first factor, we analyze both (1) the nature and extent of the breakdown in communication between the attorney and the client and (2) the breakdown's effect on the representation that the client actually received. Kinzle fails to show that any alleged breakdown in communications satisfies the first factor.

Kinzle addressed the trial court during two hearings on the motion. He stated his belief that he would not receive "fair representation." He asserted, "I've asked her to obtain various bits of evidence, having swabs retested on our own, speaking with several people, things that would be of value to my case. I've been told on several of them that either she doesn't have time or it wouldn't be worth it in trial." Furthermore, he explained, "And in regards to the communication, I've never refused to speak with her. I—we have had a lot of communication problems and I will be the first to say I—there's times where I get angry . . . I give up on talking right now." Although Kinzle told the court that his attorney acted in "an almost strong-arm manner" to convince him to accept a plea deal, the court noted that he did not accept a plea offer. Kinzle also physically threatened his attorney and told the court that he believed "she works for the same fucking people that are trying to give me life [in prison]."

After the court granted a continuance for Kinzle and his attorney to "work this out," Kinzle told the court that he had spoken with his attorney. When the trial court denied the motion to substitute counsel, it noted that Kinzle's attorney was investigating all of his witnesses in the matter and that she and Kinzle were able to communicate at that point. The court explained, "There may be some differences getting ready for trial tactics and whatnot, but that's not a reason to switch horses in midstream." Later, at a hearing on the State's motion to clarify a potential conflict of interest, the court determined that it "simply would treat any threats made as a product of somebody being upset at the moment" and that no evidence suggested that Kinzle's attorney would be unable to adequately represent him. Moreover, the court noted, "He's indicated today that he's comfortable having Ms. Trueblood continue to represent him."

Counsel has wide latitude to control trial strategy and tactics. "Counsel is not, at the risk of being charged with incompetence, obliged to raise every conceivable point, however frivolous, damaging or inconsequential it may appear at the time, or to argue every point to the court and jury which in retrospect may seem important to the defendant." Posttrial scrutiny of an attorney's trial tactics would cause the attorney to "lose the very freedom of action so essential to a skillful representation of the accused."

REPORT AND RECOMMENDATION
PAGE - 30

Kinzle told the court that he would only temporarily refuse to communicate with his attorney when he would become angry. He did not accept a plea deal, and nothing in the record indicates any communication problems during trial. His remaining arguments that he offered to support his motion pertained merely to his attorney's unwillingness to offer all of the evidence that he desired. When the court addressed the State's concern about the alleged threats, it determined that the threats were likely due to Kinzle's anger at the moment and that he did not object at that time to having his attorney continue to represent him. For these reasons, the nature and extent of the alleged conflict weighs against finding an abuse of discretion.

The second factor, the adequacy of the trial court's inquiry, appears sufficient. At two separate hearings, the court allowed Kinzle to state his concerns and allowed both his attorney and the prosecutor to respond. Despite Kinzle's assertion that the court did not address his concerns meaningfully, the court explained clearly that his lack of cooperation with his attorney was not a sufficient basis to fire her and that he had to show good cause. Kinzle's attorney told the court that she had "done substantial investigation," that she thought she was "more than competent to handle this case," and that at that point she "ha[d] done everything that is required." Because the court allowed Kinzle to express his concerns fully, inquired into them appropriately, and properly concluded that his attorney was investigating the case adequately, Kinzle fails to show that the court's inquiry was insufficient.

Finally, we consider the third factor, the motion's timeliness. Kinzle's motion was timely. To assess the timeliness of a motion to substitute counsel, we balance the "resulting inconvenience and delay against the defendant's important constitutional right to counsel of his choice." Because Kinzle moved over three months before trial, the court had adequate time to investigate the matter and to appoint new counsel, if necessary.

Having reviewed the three relevant factors, we conclude that the trial court did not err when it denied Kinzle's request for substitute counsel.

(Dkt. # 19, Ex. 16 at 5-10 (footnotes omitted).)

The Court of Appeals' decision addressing and rejecting Petitioner's Sixth Amendment claim is entitled to deference under 28 U.S.C. § 2254(d). As Respondent correctly notes, the United States Supreme Court's holdings on Sixth Amendment conflicts of interest have been limited to cases involving actual conflicts based on multiple concurrent representation of criminal defendants. *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002); *Cuyler v. Sullivan*, 446

REPORT AND RECOMMENDATION
PAGE - 31

U.S. 335, 348 (1980). In *Mickens*, the Court made clear that any extension of its Sixth Amendment conflict jurisprudence beyond this context remained an open question. *Id.* at 176. Petitioner's conflict claim does not fall within the scope of the Supreme Court's Sixth Amendment jurisprudence and the state courts' decision with respect to that claim therefore cannot be deemed contrary to any clearly established federal law. *Brewer*, 378 F.3d at 955.

The Ninth Circuit's jurisprudence in this area, as detailed above, is more expansive in that it is not confined to claims alleging an actual conflict of interest but incorporates as well Sixth Amendment claims alleging an irreconcilable conflict amounting to the constructive deprivation of counsel. The Washington Court of Appeals' decision with respect to Petitioner's Sixth Amendment claim was consistent with that body of jurisprudence, and the Court reasonably rejected the claim as nothing in the record supports Petitioner's contention that there was such a substantial conflict between himself and Ms. Trueblood that he was effectively denied his Sixth Amendment right to counsel. For these reasons, Petitioner's third ground for federal habeas relief should be denied.

### 4.    Competency

Petitioner asserts in his fourth ground for federal habeas relief that the trial court violated his due process rights when it failed to order a competency hearing. (Dkt. # 60 at 52.) Petitioner argues that defense counsel knew Petitioner had mental health issues and the trial court should have developed a *bona fide* doubt about his competency when he threatened to blow up the Courthouse and kill his attorney. (*Id.*) Respondent argues that there was no substantial doubt concerning Petitioner's competency to stand trial and therefore no requirement that the trial court order a competency hearing. (Dkt. # 66 at 40.)

REPORT AND RECOMMENDATION
PAGE - 32

It is well established that a criminal defendant cannot be tried unless he is competent. *Moran v. Godinez*, 509 U.S. 389, 396 (1993) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). The Supreme Court has held that the standard for determining competence to stand trial is "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402 (1960)). If a defendant is incompetent, due process requires suspension of the criminal trial until such time as his competency is restored. *Medina v. California*, 505 U.S. 437, 448 (1992).

The Supreme Court has made clear that a state's "failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975). A state trial judge must conduct a competency hearing whenever the evidence before him raises a *bona fide* doubt about the defendant's competence to stand trial. *Williams v. Woodford*, 384 F.3d 567, 603-04 (9th Cir. 2004); *Odle v. Woodford*, 238 F.3d 1084, 1087 (9th Cir. 2001). In determining whether there is a *bona fide* or substantial doubt regarding competency, a trial court must "evaluate all of the evidence," and a reviewing court must consider "whether a reasonable judge . . . should have experienced doubt with respect to competency to stand trial." *de Kaplany v. Enomoto,* 540 F.2d 975, 983 (9th Cir. 1976).

A state court's finding that the evidence before the trial court did not require a competency hearing is a finding of fact which is entitled to a presumption of correctness. *Torres v. Prunty,* 223 F.3d 1103, 1105 (9th Cir. 2000) (citing *Maggio v. Fulford,* 462 U.S. 111, 117

(1983)). On federal habeas review the burden is on the petitioner to rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Washington Court of Appeals, on direct appeal of Petitioner's indecent liberties conviction, rejected Petitioner's claim that the trial court erred in failing to order a competency hearing. The Court explained its conclusion as follows:

> Kinzle also contends that the trial court should have conducted a competency hearing because "the judge had substantial evidence before trial of Mr. Kinzle's questionable competency." He points to his statement during the hearing on the motion to substitute counsel that he had a "past mental health history." He also highlights the prosecutor's statement during the hearing on the State's motion to clarify a potential conflict that Kinzle, while speaking to other inmates, made a series of threats to blow up government buildings and to kill various people.

> We review for abuse of discretion a trial court's threshold determination about the existence of any reason to doubt a defendant's competence to stand trial. Under RCW 10.77.050, an incompetent person may not be tried, convicted, or sentenced for committing an offense so long as the incapacity continues. Under RCW 10.77.010(15), "incompetency" means that a person "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." When a reason exists to doubt the defendant's competence,

>> the court on its own motion or on the motion of any party shall either appoint or request the secretary [of the department of social and health services] to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.

> These procedures are mandatory. If the court fails to follow the procedures to protect an accused's right not to be tried while incompetent, it denies the accused his due process rights.

> A trial court generally maintains discretion in assessing whether or not to order a competency examination. In making such a determination, the court may consider such factors as the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports, and counsel's statements. It should give "considerable weight" to the defense attorney's opinion regarding a client's competence and ability to assist in his defense. "Washington

REPORT AND RECOMMENDATION
PAGE - 34

cases have taken the position that a trial court does not abuse its discretion if competency issues are raised."

We hold that the trial court did not abuse its discretion when it did not order a competency examination. At sentencing, the court recognized that Kinzle suffered from mental health issues. But no evidence suggests that, during trial, Kinzle was unable to understand the nature of the proceedings or to assist in his own defense. In fact, when Kinzle addressed the court, the opposite appeared to be true. Additionally, during trial, Brent Vannoy testified that while he and Kinzle were in jail together, Kinzle sought to act "crazy and stuff" to "beat[] his charge." Despite Kinzle's argument that this testimony occurred "after the judge had significant reason to doubt Mr. Kinzle's competency," the alleged threats did not provide a sufficient factual basis to conclude that Kinzle was incompetent. Moreover, Kinzle's attorney did not file a motion for an examination or otherwise indicate that Kinzle was incompetent, although she had many opportunities to confer with Kinzle before trial and to assess his competence.

(Dkt. # 19, Ex. 16 at 10-13.)

Petitioner fails to rebut the presumption of correctness that attaches to the Court of Appeals' conclusion that the evidence before the trial court did not require a competency hearing. Petitioner suggests that his refusal to be transported to court for a hearing in April 2011, his reference to past mental health issues at a hearing in July 2011, and his threats in August 2011 to bomb the courthouse and to kill various people including law enforcement, government officials, his lawyer, and the family of his victims, should have caused the court to inquire into his mental health history and to order a competency hearing. (Dkt. # 60 at 52-54.)

However, when these events are viewed in the context of the proceedings as a whole, it cannot reasonably be concluded that the events, either individually or cumulatively, should have given rise to concerns regarding Petitioner's competence. An inmate's refusal to be transported to court is not so unusual as to give rise to legitimate concerns regarding competence. As to Petitioner's reference to his "past mental health history," it is noteworthy that this brief reference was made in a hearing on Petitioner's motion for appointment of new counsel during which he

REPORT AND RECOMMENDATION
PAGE - 35

clearly and coherently conveyed his concerns regarding his appointed counsel to the court and, in so doing, demonstrated a reasonable understanding of the nature and consequences of the proceedings against him, and an ability to assist in his own defense. (*See* Dkt. # 19, Ex. 1 at 2-12.) Petitioner's subsequent threats were made in the presence of jail inmates shortly after his requests for a new attorney were denied, (*id.*, Ex. 8 at 1-2), and do not appear to have been reflective of Petitioner's behavior in court.

The Washington Court of Appeals reasonably concluded that the evidence was insufficient to raise a bona fide doubt as to Petitioner's competency. Petitioner's fourth ground for federal habeas relief should therefore be denied.

> 5. *Ineffective Assistance of Counsel: Failure to File Motion to Suppress Victim's In-Court Identification*

Petitioner asserts in his fifth ground for federal habeas relief that counsel in his indecent liberties case provided ineffective assistance when she failed to properly investigate the identification procedures employed in that case and failed to file a meritorious motion to suppress the victim's in-court identification. (Dkt. # 60 at 55.) Petitioner claims that the in-court identification was a critical component of the prosecution's case and that he was therefore prejudiced by its admission. (*See id.*) Petitioner concedes that he did not present this claim to the state courts, but maintains this was because he was not provided counsel in his initial-review collateral proceeding. (*Id.*) Respondent argues that the claim is procedurally barred and without merit. (Dkt. # 66 at 45-54.)

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged

REPORT AND RECOMMENDATION
PAGE - 36

violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal

quotation marks and citations omitted). In order to provide the state courts with the requisite

"opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each

appropriate state court for review, including a state supreme court with powers of discretionary

review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365

(1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

The exhaustion requirement, however, only applies when there are state remedies

available at the time of the federal petition. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). When

a federal habeas petitioner "fail[s] to present his claims in state court and can no longer raise

them through any state procedure, state remedies are no longer available, and are thus

exhausted." *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002). The parties agree that

Petitioner's fifth ground for relief is now technically exhausted, but procedurally defaulted,

because there are no longer any state remedies available to him. *Coleman*, 501 U.S. at 735 n.1.

Petitioner once again argues, as he did in relation to his second ground for relief, that he

is entitled to application of the *Martinez* rule to excuse his procedural default. As explained

above, in order to establish cause for a procedural default under *Martinez*, a federal habeas

petitioner must demonstrate that there was an absence of counsel, or the inadequate assistance of

counsel, in an initial-review collateral proceeding, and that the underlying ineffective assistance

of trial counsel claim is a substantial one. *Martinez*, 566 U.S. at 14. As noted above, this claim

pertains to Petitioner's indecent liberties conviction and the record makes clear that Petitioner

did not have counsel in the relevant state court proceeding; *i.e.*, Petitioner's first personal

restraint proceeding filed in 2013. Thus, this Court need only address the question of whether

Petitioner's ineffective assistance of counsel claim is substantial. As explained above, an

REPORT AND RECOMMENDATION

PAGE - 37

1   ineffective assistance of trial counsel claim is substantial if the claim has some merit. Petitioner

2   maintains that his identification claim is substantial. (Dkt. # 71 at 27.) Respondent disagrees.

3   (Dkt. # 77.)

4         Petitioner argues that his trial counsel was deficient for failing to move to suppress the

5   victim's in-court identification on Sixth Amendment grounds because that identification was a

6   product of a "state-orchestrated show-up" that occurred during an earlier hearing on the victim's

7   request for a civil protection order in which Petitioner was not represented by counsel. (*See* Dkt.

8   # 60 at 55-56.) Petitioner further argues that defense counsel should have moved to suppress the

9   identification on due process grounds as well because the state employed two one-to-one

10  confrontations prior to trial, the second of which was suggestive and unnecessary. (*Id*. at 59.)

11  Petitioner maintains that without the victim's in-court identification, he would not have been

12  convicted. (*Id*.)

13        Once again, in order to prevail on a claim of ineffective assistance of counsel, a petitioner

14  must demonstrate (1) that counsel's performance was deficient and, (2) that the deficient

15  performance prejudiced the defense. *Strickland*, 466 U.S. at 687. As with Petitioner's first two

16  ineffective assistance of counsel claims, this Court need not address the first prong of the

17  *Strickland* standard because Petitioner makes no credible showing that he was prejudiced by the

18  failure of counsel to seek to suppress the victim's in-court identification.[8]

19        As explained previously, in order to establish prejudice under the *Strickland* standard, a

20  petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

21  errors, the result of the proceeding would have been different. A reasonable probability is a

---

22  [8] The reviewing court need not address both components of the inquiry if an insufficient showing is made on one
    component. *Strickland*, 466 U.S. at 697.

23

REPORT AND RECOMMENDATION
PAGE - 38

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. There is no reasonable probability that had counsel successfully moved for suppression of the in-court identification, the outcome of Petitioner's trial on the indecent liberties charge would have been different.

The record confirms that identification was an issue during Petitioner's trial and that the victim identified Petitioner in court as the man who had attacked her, even though she was unable to identify him as her attacker when police brought him back to the scene of attack on the day it occurred. (*See* Dkt. # 19, Ex. 5 at 43-44.) However, the suggestion that Petitioner would not have been convicted if the victim's in-court identification had been suppressed is not supported by the record. In addition to the victim's testimony, the state presented the testimony of Nathan Wood, a friend of Petitioner's who accompanied Petitioner into the store where the attack occurred. Mr. Wood testified that he was present during the attack and he positively identified Petitioner as the attacker. (Dkt. # 19, Ex. 5 at 106-08, 111-12.)

The state also presented the testimony of Michael Flavin who shared a residence with both Petitioner and Mr. Wood. Mr. Flavin testified that Petitioner and Mr. Wood left together to go to the store and that Petitioner returned alone about 45 minutes later in a "frantic" state. (*Id.*, Ex. 6 at 8-9.) Mr. Flavin further testified that Petitioner took off the hat and coat he had worn to the store and immediately went into the bathroom and shaved his face.[9] (*Id.*, Ex. 6 at 9-11.) Finally, the state presented the testimony of a jail inmate who had been confined at the Snohomish County Jail at the same time as Petitioner. This inmate, Brent Vannoy, testified that

---

[9] The victim testified that when police brought Petitioner to the store for a show up, she told them that she was confused, and that the person they had brought to the store looked different from the person who had attacked her because the man was not wearing the hat or jacket the attacker had worn, and he was clean shaven whereas her attacker had had some facial hair. (Dkt. # 19, Ex. 5 at 42.)

REPORT AND RECOMMENDATION
PAGE - 39

Petitioner repeatedly told him he believed he would not be convicted because he had shaved. (*Id.*, Ex. 6 at 21-22.)

The testimony presented at trial also made clear that at the time of the attack, there were only three individuals in the store: the victim, Petitioner, and Mr. Wood. (*Id.*, Ex. 5 at 19-20, 100.) The victim made clear that the two men did not look similar, and she provided descriptions of both. (*See id.*, Ex. 5 at 21-22.) The individual whom she described as her attacker, matched the description of Petitioner, not Mr. Wood. (*See id.*, Ex. 5 at 21-22, 31.) In addition, the testimony made clear that it was Petitioner who ran out of the store after the attack, while Mr. Wood stayed at the store until police arrived. (*Id.*, Ex. 5 at 39-41, 108-110.)

The evidence presented at trial, when viewed in its totality, confirms Respondent's assertion that the victim's in-court identification played a relatively minor role in the state's case (*see* dkt. # 77 at 7), and it certainly does not support Petitioner's proposition that if the in-court identification had been suppressed he would not have been convicted. This Court concludes that there is no arguable merit to Petitioner's ineffective assistance of counsel claim arising out of counsel's failure to move to suppress the victim's in-court identification and, thus, Petitioner's fifth ground for federal habeas relief should be denied.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

REPORT AND RECOMMENDATION
PAGE - 40

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his third amended petition.

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that Petitioner's third amended petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 24, 2019**. Failure to file objections within the specified time may affect the right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

DATED this 9th day of October, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 41